UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARET A. DOWNEY,<br><br>            Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration,<br><br>            Defendant. | Case No. CV 11-02378-SP<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## INTRODUCTION

On March 21, 2011, plaintiff Margaret A. Downey filed a complaint against defendant Michael J. Astrue, seeking a review of a denial of disability insurance benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly considered the opinions of a treating

1

physician and two consultative examiners; and (2) whether the ALJ properly considered plaintiff's credibility. Plaintiff's Notice of Motion and Motion for Summary Judgment or Remand ("Pl. Mem.") at 8-13.

Having carefully studied, inter alia, the parties's moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ improperly rejected the opinions of plaintiff's treating physician and two consultative examiners without providing specific and legitimate reasons supported by substantial evidence for doing so. The ALJ also inappropriately discounted plaintiff's credibility, as the reasons he gave for doing so were not clear and convincing reasons supported by substantial evidence. Therefore, the court remands this matter to the Commissioner of the Social Security Administration ("Commissioner") in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was forty-four years old on the date of her December 17, 2008, administrative hearing, is a high school graduate and has vocational training. *See* AR at 33-34. Her past relevant work includes employment as a massage therapist, network implementation coordinator, and administrative clerk. AR at 45, 97.

On September 17, 2007, plaintiff filed an application for DIB, alleging a period of disability from April 29, 2005 through December 31, 2009, the date last insured, due to costochondritis, which causes pain in her chest, neck, back, and shoulder. AR at 18; Pl. Mem. at 1-2. Plaintiff developed costochondritis after falling at work. Pl. Mem. at 2. The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing. AR at 58-62, 65-69, 71.

On December 17, 2008, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. AR at 27-53. The ALJ also heard testimony from Aida Worthington, a vocational expert. AR at 41-50. On July 9, 2009, the ALJ denied plaintiff's claim for benefits. AR at 18-26.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff did not engage in substantial gainful activity since her alleged onset date of disability, April 29, 2005.[1] AR at 20.

At step two, the ALJ found that plaintiff suffered from the following severe "combination of impairments": costochondritis, left shoulder impingement syndrome, left acromioclavicular arthritis, obesity, sleep apnea, asthma, and depression. AR at 20.

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). AR at 20-21.

The ALJ then assessed plaintiff's residual functional capacity ("RFC")[2] and determined that she had the RFC to perform sedentary work with the following limitations: "lifting and carry ten pounds occasionally and less than 10 pounds frequently; standing and/or walking for six hours of an eight hour workday; sitting for six hours of an eight hour workday; avoiding all exposure to moving

---

[1] Although the ALJ's determinations are from the alleged date of disability through the date of the decision, plaintiff filed a claim of disability from April 29, 2005 through December 31, 2009, the date last insured. AR at 18.

[2] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

machinery and unprotected heights and performing only occasional overhead work." AR at 21-22.

The ALJ found, at step four, that plaintiff was not capable of performing her past relevant work. AR at 25.

At step five, the ALJ determined that, based upon plaintiff's age, education, work experience, and RFC, plaintiff could perform "a significant number of jobs in the national economy," including telephone solicitor, addressor, and call out operator. *Id.* Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.*

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. AR at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A.  The ALJ Failed to Provide Specific and Legitimate Reasons for Rejecting the Opinions of the Treating and Examining Physicians

Plaintiff argues that the ALJ improperly rejected the opinions of her treating physician, Dr. Samuel Chan, and two consultative examining physicians, Dr. James Styner and Dr. Allen I. Salick. Pl. Mem. at 8-11. Specifically, plaintiff contends that the reasons the ALJ cites in rejecting the opinions are not specific and legitimate. Pl. Mem. at 8. The court agrees.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. §§ 404.1527(d), (f), 416.927(d), (f); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion

carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

### 1.    Medical Opinions

#### a.    Treating Physician – Dr. Samuel Chan

Dr. Samuel Chan, a family practitioner, of the Coast City Medical Group Inc. treated plaintiff from November 22, 2005, through June 29, 2007.[3] AR at 439. The objective findings identified by Dr. Chan include: bilateral tenderness over the steroclavicular joint; tenderness over the left costochondral joints 2nd, 3rd, and 4th; joint pain and tenderness with positive impingement; limited range of motion;

---

[3] The Administrative Record only contains Dr. Chan's examination reports through April 17, 2007. AR at 339.

6

1 and tender sternum and thoracic spine T1-8. *See, e.g.*, AR 280, 308, 324. Dr.
2 Chan also ordered a functional capacity evaluation performed on plaintiff, which
3 showed plaintiff had spine and upper extremity impairment. AR at 231-53. Dr.
4 Chan diagnosed plaintiff with thoracic sprain/strain and sternal costochondritis.
5 *See, e.g.,* AR at 324.

6      In a Multiple Impairment Questionnaire, Dr. Chan opined that plaintiff
7 could sit for two hours in an eight-hour day; could stand/walk for one hour in an
8 eight-hour day; occasionally lift/carry ten pounds; had marked limitations in her
9 upper left extremity in her ability to grasp and reach; had marked limitations in her
10 upper right extremity in her ability to reach; and had moderate limitations in both
11 upper extremities in her ability to use her hands for fine manipulations. AR at
12 441-43. Dr. Chan further opined that plaintiff could not sit, stand, or walk
13 continuously in a work setting, must get up and move around every ten to fifteen
14 minutes when sitting, and would required three to four unscheduled thirty-minute
15 breaks in an eight-hour day. AR at 441-42, 444. Dr. Chan opined these functional
16 limitations existed since April 27, 2005. AR at 445.

17              **b.**    **Examining Physicians**
18 *Dr. James S. Hamada*

19      Dr. James S. Hamada, an orthopedic surgeon, examined plaintiff on July 31,
20 2006 and April 2, 2007, on a referral by Dr. Chan. AR at 188-97, 258-59. At the
21 July 31, 2006 examination, Dr. Hamada observed that plaintiff had trigger points
22 from T6 to T10 and at sternocostal junction of T5 to T10, as well as tenderness of
23 the left acromiovacular joint. AR at 191. Dr. Hamada opined that plaintiff had
24 costochondritis, left acromioclavicular arthritis, impingement syndrome in the left
25 shoulder, and trigger points involving the thoracic spine. AR at 194. Based on a
26 review of plaintiff's medical history and the examination, Dr. Hamada opined that

plaintiff's injury showed overall improvement from the alleged onset date and recommended trigger point injections to relieve her residual pain. AR at 194-95.

On April 2, 2007, Dr. Hamada noted that the trigger point injections to plaintiff's left sternochondral articulation did not provide significant relief, plaintiff had recurrent left shoulder pain, and she had a positive impingement sign, pain with terminal flexion abduction and external rotation. AR at 258. Dr. Hamada opined that plaintiff likely had at least a partial tear of the left rotator cuff and impingement syndrome, and recommended arthroscopic decompression and possible rotator cuff repair of the left shoulder. AR at 259. Dr. Hamada also opined that plaintiff had "seemingly cutoff of circulation to the left hand and wrist with abduction, external rotation, and elevation of the left upper extremity," but that it was transient. *Id.* As such, Dr. Hamada did not recommend operative treatment for the mild thoracic outlet syndrome at the time. *Id.*

*Dr. Allen I. Salick*

Dr. Allen I. Salick, a rheumatologist, examined plaintiff on January 5, 2007 on a referral by Dr. Chan. AR at 204-13. Dr. Salick observed that there was "exquisite tenderness on the left costosternal junctions; second, third, fourth and fifth" but much less on the right side. AR at 210. Dr. Salick also observed that the Adson's maneuver on the left was "markedly positive." *Id.* Dr. Salick diagnosed plaintiff with posttraumatic costochondritis on the left and thoracic outlet syndrome on the left. AR at 211. Dr. Salick recommended physical therapy and to "continue local measures like cold and heat to the anterior chest wall." AR at 212. In the event that such measures did not work, Dr. Salick recommended considering a scalene nerve block. *Id.* Dr. Salick opined that plaintiff was "Temporary Totally Disabled on an industrial basis." *Id.*

*Dr. Soheila Benrazavi*

On November 23, 2007, Dr. Soheila Benrazavi conducted an internal medicine examination of plaintiff. AR at 343-47. Dr. Benrazavi took plaintiff's medical history and examined her, but did not review any of plaintiff's medical records or conduct any diagnostic tests. AR at 343-44, 347. Dr. Benrazavi observed that plaintiff had chest pain that occurs with arm movements, taking of a deep breath, and movement of the left shoulder, as well as left shoulder pain. AR at 347. Dr. Benrazavi opined that plaintiff: could lift/carry fifty pounds occasionally and twenty-five pounds frequently; could stand/walk for six hours out of an eight-hour workday; could sit for six hours out of an eight-hour day; and could lift heavy objects above the head with the left upper extremity occasionally. *Id.*

*Dr. James K. Styner*

Dr. James K. Styner, an orthopedic surgeon, examined plaintiff on October 14, 2008 in connection with plaintiff's application for DIB. AR at 375-83. Dr. Styner reviewed plaintiff's history and medical records, and conducted a physical examination. *Id.* Dr. Styner noted that plaintiff had tenderness of the left trapezius musculature, thoracic spine, left extensor mass, right erector spinae mass, musculature, and the midline thoracic spine, 2-8, as well as a positive impingement sign on the left shoulder. AR at 378-81. Dr. Styner diagnosed plaintiff with thoracic spine pain, myoligamentous strain of the left trapezius musculature, myoligamentous strain of the cervical spine by history, myoligamentous strain of the lumbar spine, TC syndrome chest, T4 bilaterally, obesity, and sleep apnea. AR at 381. Dr. Styner ruled out compression neuropathies at the wrist, canal of Guyon and the ulnar nerve bilaterally. *Id.* Dr. Styner noted that plaintiff has not had significant long-lasting improvement with

conservative treatment and opined that her impairments would last at least twelve months into the future. *Id.*

Dr. Styner also provided an opinion of plaintiff's functional limitations in the evaluation and a Cervical Spine Impairment Questionnaire, in which he opined that plaintiff: could sit three to fours hours out of an eight-hour day, with the ability to get up and move around for ten minutes every half-hour; stand/walk for a total of two hours, with the ability to get off her feet for ten minutes after every fifteen minutes; and lift/carry fifteen pounds occasionally. AR at 370, 382.

### c. State Agency Physicians

*Dr. Earl Cooper*

Dr. Cooper, a state agency physician, issued an RFC assessment on November 30, 2007. AR at 350-54. Based on the medical history, Dr. Cooper opined that plaintiff: could lift/carry fifty pounds occasionally and twenty-five pounds frequently; could stand/walk/sit six hours in an eight-hour day; and had limitations for overhead reaching. AR at 351-52.

*Dr. P. Spitzer*

Dr. P. Spitzer, a state agency physician, issued a case analysis on April 25, 2008. AR at 359-60. Dr. Spitzer reviewed plaintiff's medical records and the internal medicine evaluation, and affirmed Dr. Cooper's findings. AR at 359.

### 2. The ALJ's Findings

Here, the ALJ concluded that plaintiff: could lift/carry ten pounds occasionally and less than ten pounds frequently; stand/walk for six hours out of an eight-hour day; sit for six hours out of an eight-hour day; must avoid exposure to moving machinery and unprotected heights; and could only perform occasional overhead work.[4] AR at 22. In reaching that determination, the ALJ gave no

---

[4] The ALJ stated that plaintiff could perform sedentary work as defined by 20 C.F.R. § 404.1567(b). AR at 21-22. But 20 C.F.R. § 404.1567(b) defines "light

weight to the opinion of treating physician Dr. Chan and little weight to the opinions of examining physicians Dr. Styner and Dr. Salick. AR at 24. The ALJ made only brief (and misleadingly incomplete) mention Dr. Hamada's opinion (AR at 23), and did not discuss Dr. Benrazavi's opinion. Instead, the ALJ "accord[ed] significant weight" to the state agency physicians and credited their opinions over the treating and examining physicians. AR at 23-24. In doing so, the ALJ noted that the state agency physicians were "well-versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act." *Id.* The ALJ erred because he failed to provide specific and legitimate reasons supported by substantial evidence for rejecting the treating and examining physicians' opinions. *See Lester*, 81 F.3d at 830-31.

As an initial matter, the ALJ correctly noted that it was within his purview, and not the physician's, to make the ultimate disability determination. AR at 24; 20 C.F.R. §§ 404.1527(e), 416.927(e). But the ALJ still must provide specific and legitimate reasons when rejecting a physician's opinion. *See Smith v. Astrue*, No. 10-4463, 2011 WL 5294848, *4 (N.D. Cal. Nov. 3, 2011) ("Although the treating physician's opinion is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, an ALJ must provide 'specific and legitimate reasons for rejecting the opinion of the treating physician.'") (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

      **a.**    **Dr. Chan**

The ALJ rejected Dr. Chan's opinion on the bases that: (1) it was inconsistent with the medical record; (2) it was inconsistent with the doctor's own

---

work" and 20 C.F.R. § 404.1567(a) defines "sedentary work." Assuming that this was a typographical error, the ALJ's specific findings still do not correspond with the definition of sedentary work, which allows for a certain amount of walking and standing but only "if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

examination and treatment notes; (3) it was inconsistent with plaintiff's report of improvement; and (4) Dr. Chan "appears to have accepted [plaintiff's] subjective complaints." AR at 24. None of these reasons are supported by the substantial evidence in the record.

Contrary to the ALJ's contentions, Dr. Chan's opinion is not inconsistent with the medical record or his treatment notes. *See Tonapetyan*, 242 F.3d at 1149 (9th Cir. 2001) (finding that it may be a sufficient reason to reject a treating physician's opinion when it is unsupported by clinical findings). Although Dr. Chan's treatment notes are not detailed, he identifies plaintiff's subjective complaints, notes his objective findings, and provides a diagnosis at each examination. *See, e.g.,* AR at 319-22, 331-34. As discussed *supra*, the objective findings include tenderness, muscle spasms, and positive Adson's test. *See, e.g.,* AR at 264, 272, 276, 292. Dr. Chan also had a Functional Capacity Evaluation performed on plaintiff, which indicated upper extremity impairments, pain, and a need for further treatment. AR at 231-53.

Further, reports from other examining physicians support Dr. Chan's opinion and objective findings. After reviewing plaintiff's medical history and examining plaintiff, Dr. Styner opined that in an eight-hour day, plaintiff could sit for three to four hours but needed to get up and move around for ten minutes every half hour. AR at 382. Dr. Styner also opined that plaintiff could stand or walk for two hours but again needed to sit for ten minutes after every fifteen minutes. *Id.* Dr. Salick diagnosed plaintiff with costochondritis and thoracic outlet syndrome. AR at 211. Dr. Hamada, who initially noted improvement in plaintiff's condition, later observed that his treatment recommendation did not yield significant relief and plaintiff continued to have pain and a positive impingement sign. AR at 195, 258. These diagnoses and opinions are all consistent with Dr. Chan's opinions.

As for the ALJ's assertion that Dr. Chan's opinion was inconsistent with plaintiff's "report of improvement," it is unclear what "report of improvement" the

1  ALJ is referring to unless it is that in Dr. Hamada's initial report. At Dr.
2  Hamada's 2006 examination of plaintiff, using the treatment notes from Dr.
3  Chan's first visit with plaintiff as a baseline, Dr. Hamada noted improvement in
4  plaintiff. AR at 195. But as just discussed, at the subsequent 2007 examination,
5  Dr. Hamada found that his recommended treatment had not yielded significant
6  relief in plaintiff's left sternochondral articulation or lasting relief on her left
7  shoulder. AR at 258. Indeed, Dr. Hamada found plaintiff's "condition is
8  worsening." AR at 259.
9       The ALJ also asserts that Dr. Chan "accepted plaintiff's subjective
10 complaints," implying that Dr. Chan accepted such complaints without any
11 objective evidence. AR at 24. As discussed *supra*, Dr. Chan's notes indicate
12 objective findings that supported plaintiff's subjective complaints, as did the
13 objective findings of the other physicians.
14              b.    Dr. Styner
15      The ALJ gave little weight to the opinion of Dr. Styner because his opinion
16 did not reflect a longitudinal history with plaintiff. This is not a legitimate reason.
17 If a longitudinal history were required, then the only opinions an ALJ would be
18 required to consider would be those of treating physicians. But the regulations
19 require the ALJ to consider the opinions of all physicians. *See* 20 C.F.R.
20 §§ 404.1527(d), 416.927(d). While an ALJ must give more weight to treating
21 physicians because, inter alia, of the longitudinal history with the patient, it cannot
22 simply reject the opinions of examining and state agency physicians for the lack of
23 a treatment history. *See Lester*, 81 F.3d at 830 (requiring an ALJ to consider the
24 opinion of examining physicians). Indeed, the ALJ's stated reason for rejecting
25 Dr. Styner's opinion is even more glaringly deficient in light of the great weight
26 the ALJ gave to the state agency physicians (AR at 23-24), who not only do not
27 have a longitudinal history with plaintiff but also did not examine her.
28

        **c.**    **Dr. Salick**

The ALJ gave little weight to Dr. Salick's opinion because it was inconsistent with the medical evidence. AR at 24. As discussed *supra*, there were objective findings to support Dr. Salick's diagnosis.

Accordingly, the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for rejecting the opinions of Dr. Chan, Dr. Styner, and Dr. Salick.

## B.    The ALJ Failed to Provide Clear and Convincing Reasons for Discounting Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ failed to make a proper credibility determination. Pl. Mem. at 12-13. Specifically, plaintiff contends that the ALJ did not provide clear and convincing reasons that are supported by substantial evidence for discounting plaintiff's credibility. *Id.* The court agrees.

An ALJ must make specific credibility findings, supported by the record. SSR 96-7p. To determine whether testimony concerning symptoms is credible, an ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, an ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). An ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR at 20.

At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. Here, the ALJ found that plaintiff's statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent that they are inconsistent with the [RFC] assessment." AR at 22. The ALJ provided three reasons for discounting plaintiff's credibility: (1) plaintiff's daily activities were inconsistent with her alleged symptoms; (2) plaintiff only had conservative treatment; and (3) her impairments are stable. AR at 22-24. The ALJ's reasons were not clear and convincing reasons supported by substantial evidence.

First, the ALJ asserted that plaintiff acknowledged that she performs substantial daily activities at a level fundamentally inconsistent with her symptoms. AR at 23-24. *See Morgan*, 169 F.3d at 599 (a plaintiff's ability "to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting" may be sufficient to discredit her). The court disagrees with this characterization of plaintiff's testimony. Plaintiff testified to an ability to bathe and dress herself, prepare simple meals, and go grocery shopping. AR at 37. "[T]he mere fact a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1051 (9th Cir. 2001). Plaintiff does not need to be "utterly capacitated." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). More to the point, the activities plaintiff engages in are not inconsistent with the functional limitations in sitting, standing, lifting, reaching, and manipulating her hands that she alleges.

Second, the ALJ notes that plaintiff received conservative treatment, did not have any recent major treatment, and showed a "lack of attempts to obtain relief from pain and other symptoms." AR at 22-23. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."). The ALJ is correct that plaintiff's treatment is conservative. *See Tommasetti*, 533 F.3d at 1040 (describing physical therapy and anti-inflammatory medication as conservative treatment). But the ALJ fails to note two important factors: (1) the conservative treatment was not yielding significant improvement (AR 258, 381); and (2) plaintiff could not take stronger medication due to the effects on her liver (AR at 443). While plaintiff's conservative treatment may ultimately be a clear and convincing reason for discounting her credibility, the ALJ must consider the reasons for the conservative treatment. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (stating that the failure to seek treatment may be a basis for an adverse credibility finding unless there was a good reason for not doing so).

Finally, the fact that plaintiff's impairments are stable does not support an adverse credibility finding. Being stable simply means that plaintiff's impairments are not changing. It does not mean that plaintiff's impairments are not serious or functionally limiting.

In short, the reasons the ALJ stated for his credibility finding are not clear and convincing reasons supported by substantial evidence.

## V.

## REMAND IS APPROPRIATE

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke*

1 *v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d
2 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings
3 turns upon their likely utility). But where there are outstanding issues that must be
4 resolved before a determination can be made, and it is not clear from the record
5 that the ALJ would be required to find a plaintiff disabled if all the evidence were
6 properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96;
7 *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ erred in failing to properly evaluate both the physicians' opinions and plaintiff's credibility. On remand, the ALJ shall reconsider the opinions provided by the treating and examining physicians regarding plaintiff's impairments and limitations, and either credit their opinions or provide specific and legitimate reasons supported by substantial evidence for rejecting them. The ALJ shall also reconsider plaintiff's subjective complaints with respect to her physical impairments and the resulting limitations, and either credit plaintiff's testimony or provide clear and convincing reasons supported by substantial evidence for rejecting them. The ALJ shall then proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: November 22, 2011

_____
HONORABLE SHERI PYM
United States Magistrate Judge