1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              CENTRAL DISTRICT OF CALIFORNIA

10

11    MARGARET A. DOWNEY,                    )    Case No. CV 11-02378-SP
                                             )
12                     Plaintiff,            )
                                             )
13             v.                            )    MEMORANDUM OPINION AND
                                             )    ORDER
14                                           )
      MICHAEL J. ASTRUE,                     )
15    Commissioner of Social Security        )
      Administration,                        )
16                                           )
                       Defendant.            )
17                                           )
                                             )
18    _____)

19                                         **I.**

20                              **INTRODUCTION**

21         On March 21, 2011, plaintiff Margaret A. Downey filed a complaint against

22    defendant Michael J. Astrue, seeking a review of a denial of disability insurance

23    benefits ("DIB").  Both plaintiff and defendant have consented to proceed for all

24    purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c).

25    The court deems the matter suitable for adjudication without oral argument.

26         Plaintiff presents two disputed issues for decision:  (1) whether the

27    Administrative Law Judge ("ALJ") properly considered the opinions of a treating

28

                                           1

1   physician and two consultative examiners; and (2) whether the ALJ properly

2   considered plaintiff's credibility.  Plaintiff's Notice of Motion and Motion for

3   Summary Judgment or Remand ("Pl. Mem.") at 8-13.

4        Having carefully studied, inter alia, the parties's moving papers, the

5   Administrative Record ("AR"), and the decision of the ALJ, the court concludes

6   that, as detailed herein, the ALJ improperly rejected the opinions of plaintiff's

7   treating physician and two consultative examiners without providing specific and

8   legitimate reasons supported by substantial evidence for doing so.  The ALJ also

9   inappropriately discounted plaintiff's credibility, as the reasons he gave for doing

10  so were not clear and convincing reasons supported by substantial evidence.

11  Therefore, the court remands this matter to the Commissioner of the Social

12  Security Administration ("Commissioner") in accordance with the principles and

13  instructions enunciated in this Memorandum Opinion and Order.

14                                    **II.**

15                  **FACTUAL AND PROCEDURAL BACKGROUND**

16       Plaintiff, who was forty-four years old on the date of her December 17,

17  2008, administrative hearing, is a high school graduate and has vocational

18  training.  *See* AR at 33-34.  Her past relevant work includes employment as a

19  massage therapist, network implementation coordinator, and administrative clerk.

20  AR at 45, 97.

21       On September 17, 2007, plaintiff filed an application for DIB, alleging a

22  period of disability from April 29, 2005 through December 31, 2009, the date last

23  insured, due to costochondritis, which causes pain in her chest, neck, back, and

24  shoulder.  AR at 18; Pl. Mem. at 1-2.  Plaintiff developed costochondritis after

25  falling at work.  Pl. Mem. at 2.  The Commissioner denied plaintiff's application

26  initially and upon reconsideration, after which she filed a request for a hearing.

27  AR at 58-62, 65-69, 71.

28

1  On December 17, 2008, plaintiff, represented by counsel, appeared and

2  testified at a hearing before the ALJ.  AR at 27-53.  The ALJ also heard testimony

3  from Aida Worthington, a vocational expert.  AR at 41-50.  On July 9, 2009, the

4  ALJ denied plaintiff's claim for benefits.  AR at 18-26.

5  Applying the well-known five-step sequential evaluation process, the ALJ

6  found, at step one, that plaintiff did not engage in substantial gainful activity since

7  her alleged onset date of disability, April 29, 2005.[1]  AR at 20.

8  At step two, the ALJ found that plaintiff suffered from the following severe

9  "combination of impairments":  costochondritis, left shoulder impingement

10  syndrome, left acromioclavicular arthritis, obesity, sleep apnea, asthma, and

11  depression.  AR at 20.

12  At step three, the ALJ found that plaintiff's impairments, whether

13  individually or in combination, did not meet or medically equal one of the listed

14  impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the

15  "Listings").  AR at 20-21.

16  The ALJ then assessed plaintiff's residual functional capacity ("RFC")[2] and

17  determined that she had the RFC to perform sedentary work with the following

18  limitations:  "lifting and carry ten pounds occasionally and less than 10 pounds

19  frequently; standing and/or walking for six hours of an eight hour workday; sitting

20  for six hours of an eight hour workday; avoiding all exposure to moving

21  _____

22  [1]  Although the ALJ's determinations are from the alleged date of disability
through the date of the decision, plaintiff filed a claim of disability from April 29,
23  2005 through December 31, 2009, the date last insured.  AR at 18.

24
[2]  Residual functional capacity is what a claimant can do despite existing
25  exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152,
26  1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step
evaluation, the ALJ must proceed to an intermediate step in which the ALJ
27  assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486
28  F.3d 1149, 1151 n.2 (9th Cir. 2007).

1 machinery and unprotected heights and performing only occasional overhead

2 work."  AR at 21-22.

3        The ALJ found, at step four, that plaintiff was not capable of performing her

4 past relevant work.  AR at 25.

5        At step five, the ALJ determined that, based upon plaintiff's age, education,

6 work experience, and RFC, plaintiff could perform "a significant number of jobs

7 in the national economy," including telephone solicitor, addressor, and call out

8 operator. *Id.*  Consequently, the ALJ concluded that plaintiff did not suffer from a

9 disability as defined by the Social Security Act. *Id.*

10        Plaintiff filed a timely request for review of the ALJ's decision, which was

11 denied by the Appeals Council.  AR at 1-3.  The ALJ's decision stands as the final

12 decision of the Commissioner.

### III.

### STANDARD OF REVIEW

15        This court is empowered to review decisions by the Commissioner to deny

16 benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

17 Administration must be upheld if they are free of legal error and supported by

18 substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

19 (as amended).  But if the court determines that the ALJ's findings are based on

20 legal error or are not supported by substantial evidence in the record, the court

21 may reject the findings and set aside the decision to deny benefits. *Aukland v.*

22 *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

23 1144, 1147 (9th Cir. 2001).

24        "Substantial evidence is more than a mere scintilla, but less than a

25 preponderance." *Aukland*, 257 F.3d at 1035.  Substantial evidence is such

26 "relevant evidence which a reasonable person might accept as adequate to support

27 a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

28

1 | F.3d at 459.  To determine whether substantial evidence supports the ALJ's

2 | finding, the reviewing court must review the administrative record as a whole,

3 | "weighing both the evidence that supports and the evidence that detracts from the

4 | ALJ's conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be

5 | affirmed simply by isolating a specific quantum of supporting evidence.'"

6 | *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

7 | Cir. 1998)).  If the evidence can reasonably support either affirming or reversing

8 | the ALJ's decision, the reviewing court "'may not substitute its judgment for that

9 | of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

10 | 1992)).

11 | **IV.**

12 | **DISCUSSION**

13 | **A.**     **The ALJ Failed to Provide Specific and Legitimate Reasons for**

14 | **Rejecting the Opinions of the Treating and Examining Physicians**

15 | Plaintiff argues that the ALJ improperly rejected the opinions of her treating

16 | physician, Dr. Samuel Chan, and two consultative examining physicians, Dr.

17 | James Styner and Dr. Allen I. Salick.  Pl. Mem. at 8-11.  Specifically, plaintiff

18 | contends that the reasons the ALJ cites in rejecting the opinions are not specific

19 | and legitimate.  Pl. Mem. at 8.  The court agrees.

20 | In determining whether a claimant has a medically determinable

21 | impairment, among the evidence the ALJ considers is medical evidence.  20

22 | C.F.R.§§ 404.1527(b), 416.927(b).  In evaluating medical opinions, the

23 | regulations distinguish among three types of physicians:  (1) treating physicians;

24 | (2) examining physicians; and (3) non-examining physicians.  20 C.F.R.

25 | §§ 404.1527(d), (f), 416.927(d), (f); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

26 | 1995) (as amended).  "Generally, a treating physician's opinion carries more

27 | weight than an examining physician's, and an examining physician's opinion

28 |

1   carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246

2   F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-

3   (2).  The opinion of the treating physician is generally given the greatest weight

4   because the treating physician is employed to cure and has a greater opportunity to

5   understand and observe a claimant.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th

6   Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

7          Nevertheless, the ALJ is not bound by the opinion of the treating physician.

8   *Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the

9   ALJ must provide clear and convincing reasons for giving it less weight.  *Lester*,

10  81 F.3d at 830.  If the treating physician's opinion is contradicted by other

11  opinions, the ALJ must provide specific and legitimate reasons supported by

12  substantial evidence for rejecting it.  *Id.* at 830.  Likewise, the ALJ must provide

13  specific and legitimate reasons supported by substantial evidence in rejecting the

14  contradicted opinions of examining physicians.  *Id.* at 830-31.  The opinion of a

15  non-examining physician, standing alone, cannot constitute substantial evidence.

16  *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v.

17  Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d

18  813, 818 n.7 (9th Cir. 1993).

19          **1.      Medical Opinions**

20                  **a.       Treating Physician – Dr. Samuel Chan**

21          Dr. Samuel Chan, a family practitioner, of the Coast City Medical Group

22  Inc. treated plaintiff from November 22, 2005, through June 29, 2007.[3]  AR at 439.

23  The objective findings identified by Dr. Chan include:  bilateral tenderness over

24  the steroclavicular joint; tenderness over the left costochondral joints 2nd, 3rd, and

25  4th; joint pain and tenderness with positive impingement; limited range of motion;

26

27      [3]   The Administrative Record only contains Dr. Chan's examination reports

28  through April 17, 2007.  AR at 339.

6

1  and tender sternum and thoracic spine T1-8. *See, e.g.*, AR 280, 308, 324. Dr.

2  Chan also ordered a functional capacity evaluation performed on plaintiff, which

3  showed plaintiff had spine and upper extremity impairment. AR at 231-53. Dr.

4  Chan diagnosed plaintiff with thoracic sprain/strain and sternal costochondritis.

5  *See, e.g.,* AR at 324.

6      In a Multiple Impairment Questionnaire, Dr. Chan opined that plaintiff

7  could sit for two hours in an eight-hour day; could stand/walk for one hour in an

8  eight-hour day;  occasionally lift/carry ten pounds; had marked limitations in her

9  upper left extremity in her ability to grasp and reach; had marked limitations in her

10  upper right extremity in her ability to reach; and had moderate limitations in both

11  upper extremities in her ability to use her hands for fine manipulations. AR at

12  441-43. Dr. Chan further opined that plaintiff could not sit, stand, or walk

13  continuously in a work setting, must get up and move around every ten to fifteen

14  minutes when sitting, and would required three to four unscheduled thirty-minute

15  breaks in an eight-hour day. AR at 441-42, 444. Dr. Chan opined these functional

16  limitations existed since April 27, 2005. AR at 445.

17                     **b.      Examining Physicians**

18  *Dr. James S. Hamada*

19      Dr. James S. Hamada, an orthopedic surgeon, examined plaintiff on July 31,

20  2006 and April 2, 2007, on a referral by Dr. Chan. AR at 188-97, 258-59. At the

21  July 31, 2006 examination, Dr. Hamada observed that plaintiff had trigger points

22  from T6 to T10 and at sternocostal junction of T5 to T10, as well as tenderness of

23  the left acromiovacular joint. AR at 191. Dr. Hamada opined that plaintiff had

24  costochondritis, left acromioclavicular arthritis, impingement syndrome in the left

25  shoulder, and trigger points involving the thoracic spine. AR at 194. Based on a

26  review of plaintiff's medical history and the examination, Dr. Hamada opined that

27

28

1  plaintiff's injury showed overall improvement from the alleged onset date and

2  recommended trigger point injections to relieve her residual pain.  AR at 194-95.

3       On April 2, 2007, Dr. Hamada noted that the trigger point injections to

4  plaintiff's left sternochondral articulation did not provide significant relief,

5  plaintiff had recurrent left shoulder pain, and she had a positive impingement sign,

6  pain with terminal flexion abduction and external rotation.  AR at 258.  Dr.

7  Hamada opined that plaintiff likely had at least a partial tear of the left rotator cuff

8  and impingement syndrome, and recommended arthroscopic decompression and

9  possible rotator cuff repair of the left shoulder.  AR at 259.  Dr. Hamada also

10 opined that plaintiff had "seemingly cutoff of circulation to the left hand and wrist

11 with abduction, external rotation, and elevation of the left upper extremity," but

12 that it was transient.  *Id.*  As such, Dr. Hamada did not recommend operative

13 treatment for the mild thoracic outlet syndrome at the time.  *Id.*

14 *Dr. Allen I. Salick*

15      Dr. Allen I. Salick, a rheumatologist, examined plaintiff on January 5, 2007

16 on a referral by Dr. Chan.  AR at 204-13.  Dr. Salick observed that there was

17 "exquisite tenderness on the left costosternal junctions; second, third, fourth and

18 fifth" but much less on the right side.  AR at 210.  Dr. Salick also observed that

19 the Adson's maneuver on the left was "markedly positive."  *Id.*  Dr. Salick

20 diagnosed plaintiff with posttraumatic costochondritis on the left and thoracic

21 outlet syndrome on the left.  AR at 211.  Dr. Salick recommended physical therapy

22 and to "continue local measures like cold and heat to the anterior chest wall."  AR

23 at 212.  In the event that such measures did not work, Dr. Salick recommended

24 considering a scalene nerve block.  *Id.*  Dr. Salick opined that plaintiff was

25 "Temporary Totally Disabled on an industrial basis."  *Id.*

26

27

28

1 | *Dr. Soheila Benrazavi*

2 |     On November 23, 2007, Dr. Soheila Benrazavi conducted an internal

3 | medicine examination of plaintiff.  AR at 343-47.  Dr. Benrazavi took plaintiff's

4 | medical history and examined her, but did not review any of plaintiff's medical

5 | records or conduct any diagnostic tests.  AR at 343-44, 347.  Dr. Benrazavi

6 | observed that plaintiff had chest pain that occurs with arm movements, taking of a

7 | deep breath, and movement of the left shoulder, as well as left shoulder pain.  AR

8 | at 347.  Dr. Benrazavi opined that plaintiff:  could lift/carry fifty pounds

9 | occasionally and twenty-five pounds frequently; could stand/walk for six hours

10 | out of an eight-hour workday; could sit for six hours out of an eight-hour day; and

11 | could lift heavy objects above the head with the left upper extremity occasionally.

12 | *Id.*

13 | *Dr. James K. Styner*

14 |     Dr. James K. Styner, an orthopedic surgeon, examined plaintiff on October

15 | 14, 2008 in connection with plaintiff's application for DIB.  AR at 375-83.  Dr.

16 | Styner reviewed plaintiff's history and medical records, and conducted a physical

17 | examination.  *Id.*  Dr. Styner noted that plaintiff had tenderness of the left

18 | trapezius musculature, thoracic spine, left extensor mass, right erector spinae

19 | mass, musculature, and the midline thoracic spine, 2-8, as well as a positive

20 | impingement sign on the left shoulder.  AR at 378-81.  Dr. Styner diagnosed

21 | plaintiff with thoracic spine pain, myoligamentous strain of the left trapezius

22 | musculature, myoligamentous strain of the cervical spine by history,

23 | myoligamentous strain of the lumbar spine, TC syndrome chest, T4 bilaterally,

24 | obesity, and sleep apnea.  AR at 381.  Dr. Styner ruled out compression

25 | neuropathies at the wrist, canal of Guyon and the ulnar nerve bilaterally.  *Id.*  Dr.

26 | Styner noted that plaintiff has not had significant long-lasting improvement with

27

28

9

1  conservative treatment and opined that her impairments would last at least twelve

2  months into the future. *Id.*

3      Dr. Styner also provided an opinion of plaintiff's functional limitations in

4  the evaluation and a Cervical Spine Impairment Questionnaire, in which he opined

5  that plaintiff:  could sit three to fours hours out of an eight-hour day, with the

6  ability to get up and move around for ten minutes every half-hour; stand/walk for a

7  total of two hours, with the ability to get off her feet for ten minutes after every

8  fifteen minutes; and lift/carry fifteen pounds occasionally.  AR at 370, 382.

9              **c.      State Agency Physicians**

10  *Dr. Earl Cooper*

11      Dr. Cooper, a state agency physician, issued an RFC assessment on

12  November 30, 2007. AR at 350-54.  Based on the medical history, Dr. Cooper

13  opined that plaintiff: could lift/carry fifty pounds occasionally and twenty-five

14  pounds frequently; could stand/walk/sit six hours in an eight-hour day; and had

15  limitations for overhead reaching. AR at 351-52.

16  *Dr. P. Spitzer*

17      Dr. P. Spitzer, a state agency physician, issued a case analysis on April 25,

18  2008.  AR at 359-60.  Dr. Spitzer reviewed plaintiff's medical records and the

19  internal medicine evaluation, and affirmed Dr. Cooper's findings.  AR at 359.

20          **2.      The ALJ's Findings**

21      Here, the ALJ concluded that plaintiff:  could lift/carry ten pounds

22  occasionally and less than ten pounds frequently; stand/walk for six hours out of

23  an eight-hour day; sit for six hours out of an eight-hour day; must avoid exposure

24  to moving machinery and unprotected heights; and could only perform occasional

25  overhead work.[4]  AR at 22.  In reaching that determination, the ALJ gave no

26

27      [4]   The ALJ stated that plaintiff could perform sedentary work as defined by 20

28  C.F.R. § 404.1567(b).  AR at 21-22.  But 20 C.F.R. § 404.1567(b) defines "light

10

1   weight to the opinion of treating physician Dr. Chan and little weight to the

2   opinions of examining physicians Dr. Styner and Dr. Salick.  AR at 24.  The ALJ

3   made only brief (and misleadingly incomplete) mention Dr. Hamada's opinion

4   (AR at 23), and did not discuss Dr. Benrazavi's opinion.  Instead, the ALJ

5   "accord[ed] significant weight" to the state agency physicians and credited their

6   opinions over the treating and examining physicians.  AR at 23-24.  In doing so,

7   the ALJ noted that the state agency physicians were "well-versed in the

8   assessment of functionality as it pertains to the disability provisions of the Social

9   Security Act."  *Id.*  The ALJ erred because he failed to provide specific and

10  legitimate reasons supported by substantial evidence for rejecting the treating and

11  examining physicians' opinions.  *See Lester*, 81 F.3d at 830-31.

12          As an initial matter, the ALJ correctly noted that it was within his purview,

13  and not the physician's, to make the ultimate disability determination.  AR at 24;

14  20 C.F.R. §§ 404.1527(e), 416.927(e).  But the ALJ still must provide specific and

15  legitimate reasons when rejecting a physician's opinion.  *See Smith v. Astrue*, No.

16  10-4463, 2011 WL 5294848, *4 (N.D. Cal. Nov. 3, 2011) ("Although the treating

17  physician's opinion is not necessarily conclusive as to either a physical condition

18  or the ultimate issue of disability, an ALJ must provide 'specific and legitimate

19  reasons for rejecting the opinion of the treating physician.'") (quoting *Murray v.*

20  *Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

21                  **a.      Dr. Chan**

22          The ALJ rejected Dr. Chan's opinion on the bases that:  (1) it was

23  inconsistent with the medical record; (2) it was inconsistent with the doctor's own

24  _____

25  work" and 20 C.F.R. § 404.1567(a) defines "sedentary work."  Assuming that this

26  was a typographical error, the ALJ's specific findings still do not correspond with
    the definition of sedentary work, which allows for a certain amount of walking and
27  standing but only "if walking and standing are required occasionally and other
    sedentary criteria are met."  20 C.F.R. § 404.1567(a).

28  sedentary criteria are met."  20 C.F.R. § 404.1567(a).

1  examination and treatment notes; (3) it was inconsistent with plaintiff's report of

2  improvement; and (4) Dr. Chan "appears to have accepted [plaintiff's] subjective

3  complaints." AR at 24. None of these reasons are supported by the substantial

4  evidence in the record.

5      Contrary to the ALJ's contentions, Dr. Chan's opinion is not inconsistent

6  with the medical record or his treatment notes. *See Tonapetyan*, 242 F.3d at 1149

7  (9th Cir. 2001) (finding that it may be a sufficient reason to reject a treating

8  physician's opinion when it is unsupported by clinical findings). Although Dr.

9  Chan's treatment notes are not detailed, he identifies plaintiff's subjective

10  complaints, notes his objective findings, and provides a diagnosis at each

11  examination. *See, e.g.,* AR at 319-22, 331-34. As discussed *supra*, the objective

12  findings include tenderness, muscle spasms, and positive Adson's test. *See, e.g.,*

13  AR at 264, 272, 276, 292. Dr. Chan also had a Functional Capacity Evaluation

14  performed on plaintiff, which indicated upper extremity impairments, pain, and a

15  need for further treatment. AR at 231-53.

16      Further, reports from other examining physicians support Dr. Chan's

17  opinion and objective findings. After reviewing plaintiff's medical history and

18  examining plaintiff, Dr. Styner opined that in an eight-hour day, plaintiff could sit

19  for three to four hours but needed to get up and move around for ten minutes every

20  half hour. AR at 382. Dr. Styner also opined that plaintiff could stand or walk for

21  two hours but again needed to sit for ten minutes after every fifteen minutes. *Id.*

22  Dr. Salick diagnosed plaintiff with costochondritis and thoracic outlet syndrome.

23  AR at 211. Dr. Hamada, who initially noted improvement in plaintiff's condition,

24  later observed that his treatment recommendation did not yield significant relief

25  and plaintiff continued to have pain and a positive impingement sign. AR at 195,

26  258. These diagnoses and opinions are all consistent with Dr. Chan's opinions.

27      As for the ALJ's assertion that Dr. Chan's opinion was inconsistent with

28  plaintiff's "report of improvement," it is unclear what "report of improvement" the

1   ALJ is referring to unless it is that in Dr. Hamada's initial report.  At Dr.

2   Hamada's 2006 examination of plaintiff, using the treatment notes from Dr.

3   Chan's first visit with plaintiff as a baseline, Dr. Hamada noted improvement in

4   plaintiff.  AR at 195.  But as just discussed, at the subsequent 2007 examination,

5   Dr. Hamada found that his recommended treatment had not yielded significant

6   relief in plaintiff's left sternochondral articulation or lasting relief on her left

7   shoulder.  AR at 258.  Indeed, Dr. Hamada found plaintiff's "condition is

8   worsening."  AR at 259.

9        The ALJ also asserts that Dr. Chan "accepted plaintiff's subjective

10  complaints," implying that Dr. Chan accepted such complaints without any

11  objective evidence.  AR at 24.  As discussed *supra*, Dr.  Chan's notes indicate

12  objective findings that supported plaintiff's subjective complaints, as did the

13  objective findings of the other physicians.

14                    **b.    Dr. Styner**

15        The ALJ gave little weight to the opinion of Dr. Styner because his opinion

16  did not reflect a longitudinal history with plaintiff.  This is not a legitimate reason.

17  If a longitudinal history were required, then the only opinions an ALJ would be

18  required to consider would be those of treating physicians.  But the regulations

19  require the ALJ to consider the opinions of all physicians.  *See* 20 C.F.R.

20  §§ 404.1527(d), 416.927(d).  While an ALJ must give more weight to treating

21  physicians because, inter alia, of the longitudinal history with the patient, it cannot

22  simply reject the opinions of examining and state agency physicians for the lack of

23  a treatment history.  *See Lester*, 81 F.3d at 830 (requiring an ALJ to consider the

24  opinion of examining physicians).  Indeed, the ALJ's stated reason for rejecting

25  Dr. Styner's opinion is even more glaringly deficient in light of the great weight

26  the ALJ gave to the state agency physicians (AR at 23-24), who not only do not

27  have a longitudinal history with plaintiff but also did not examine her.

28

13

1           **c.**     **Dr. Salick**

2        The ALJ gave little weight to Dr. Salick's opinion because it was

3 inconsistent with the medical evidence.  AR at 24.  As discussed *supra*, there were

4 objective findings to support Dr. Salick's diagnosis.

5        Accordingly, the ALJ failed to provide specific and legitimate reasons,

6 supported by substantial evidence, for rejecting the opinions of Dr. Chan, Dr.

7 Styner, and Dr. Salick.

8 **B.**     **The ALJ Failed to Provide Clear and Convincing Reasons for**

9         **Discounting Plaintiff's Subjective Complaints**

10        Plaintiff argues that the ALJ failed to make a proper credibility

11 determination.  Pl. Mem. at 12-13.  Specifically, plaintiff contends that the ALJ

12 did not provide clear and convincing reasons that are supported by substantial

13 evidence for discounting plaintiff's credibility.  *Id.*  The court agrees.

14        An ALJ must make specific credibility findings, supported by the record.

15 SSR 96-7p.  To determine whether testimony concerning symptoms is credible, an

16 ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-

17 36  (9th Cir. 2007).  First, an ALJ must determine whether a claimant produced

18 objective medical evidence of an underlying impairment "'which could reasonably

19 be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting

20 *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if there

21 is no evidence of malingering, an "ALJ can reject the claimant's testimony about

22 the severity of her symptoms only by offering specific, clear and convincing

23 reasons for doing so." *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*, 331 F.3d

24 1030, 1040 (9th Cir. 2003).  An ALJ may consider several factors in weighing a

25 claimant's credibility, including: (1) ordinary techniques of credibility evaluation

26 such as a claimant's reputation for lying; (2) the failure to seek treatment or follow

27 a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti*

28 *v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

1    At the first step, the ALJ found that plaintiff's medically determinable

2  impairments could reasonably be expected to cause the alleged symptoms.  AR at

3  20.

4    At the second step, because the ALJ did not find any evidence of

5  malingering, the ALJ was required to provide clear and convincing reasons for

6  discounting plaintiff's credibility.  Here, the ALJ found that plaintiff's statements

7  "concerning the intensity, persistence and limiting effects of [her] symptoms are

8  not credible to the extent that they are inconsistent with the [RFC] assessment."

9  AR at 22.  The ALJ provided three reasons for discounting plaintiff's credibility:

10  (1) plaintiff's daily activities were inconsistent with her alleged symptoms; (2)

11  plaintiff only had conservative treatment; and (3) her impairments are stable.  AR

12  at 22-24.  The ALJ's reasons were not clear and convincing reasons supported by

13  substantial evidence.

14    First, the ALJ asserted that plaintiff acknowledged that she performs

15  substantial daily activities at a level fundamentally inconsistent with her

16  symptoms.  AR at 23-24.  *See Morgan*, 169 F.3d at 599 (a plaintiff's ability "to

17  spend a substantial part of [her] day engaged in pursuits involving the

18  performance of physical functions that are transferable to a work setting" may be

19  sufficient to discredit her).  The court disagrees with this characterization of

20  plaintiff's testimony.  Plaintiff testified to an ability to bathe and dress herself,

21  prepare simple meals, and go grocery shopping.  AR at 37.  "[T]he mere fact a

22  plaintiff has carried on certain daily activities, such as grocery shopping, driving a

23  car, or limited walking for exercise, does not in any way detract from her

24  credibility as to her overall disability."  *Vertigan v. Halter*, 260 F.3d 1044, 1051

25  (9th Cir. 2001).  Plaintiff does not need to be "utterly capacitated."  *Fair v. Bowen*,

26  885 F.2d 597, 603 (9th Cir. 1989).  More to the point, the activities plaintiff

27  engages in are not inconsistent with the functional limitations in sitting, standing,

28  lifting, reaching, and manipulating her hands that she alleges.

1    Second, the ALJ notes that plaintiff received conservative treatment, did not

2  have any recent major treatment, and showed a "lack of attempts to obtain relief

3  from pain and other symptoms." AR at 22-23. *See Parra v. Astrue*, 481 F.3d 742,

4  751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to

5  discount a claimant's testimony regarding severity of an impairment."). The ALJ

6  is correct that plaintiff's treatment is conservative. *See Tommasetti*, 533 F.3d at

7  1040 (describing physical therapy and anti-inflammatory medication as

8  conservative treatment). But the ALJ fails to note two important factors: (1) the

9  conservative treatment was not yielding significant improvement (AR 258, 381);

10 and (2) plaintiff could not take stronger medication due to the effects on her liver

11 (AR at 443). While plaintiff's conservative treatment may ultimately be a clear

12 and convincing reason for discounting her credibility, the ALJ must consider the

13 reasons for the conservative treatment. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th

14 Cir. 2007) (stating that the failure to seek treatment may be a basis for an adverse

15 credibility finding unless there was a good reason for not doing so).

16    Finally, the fact that plaintiff's impairments are stable does not support an

17 adverse credibility finding. Being stable simply means that plaintiff's impairments

18 are not changing. It does not mean that plaintiff's impairments are not serious or

19 functionally limiting.

20    In short, the reasons the ALJ stated for his credibility finding are not clear

21 and convincing reasons supported by substantial evidence.

**V.**

**REMAND IS APPROPRIATE**

24    The decision whether to remand for further proceedings or reverse and

25 award benefits is within the discretion of the district court. *McAllister v. Sullivan*,

26 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by

27 further proceedings, or where the record has been fully developed, it is appropriate

28 to exercise this discretion to direct an immediate award of benefits. *See Benecke*

1   *v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d

2   1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings

3   turns upon their likely utility).  But where there are outstanding issues that must be

4   resolved before a determination can be made, and it is not clear from the record

5   that the ALJ would be required to find a plaintiff disabled if all the evidence were

6   properly evaluated, remand is appropriate.  *See Benecke*, 379 F.3d at 595-96;

7   *Harman*, 211 F.3d at 1179-80.

8        Here, as set out above, remand is required because the ALJ erred in failing

9   to properly evaluate both the physicians' opinions and plaintiff's credibility.  On

10  remand, the ALJ shall reconsider the opinions provided by the treating and

11  examining physicians regarding plaintiff's impairments and limitations, and either

12  credit their opinions or provide specific and legitimate reasons supported by

13  substantial evidence for rejecting them.  The ALJ shall also reconsider plaintiff's

14  subjective complaints with respect to her physical impairments and the resulting

15  limitations, and either credit plaintiff's testimony or provide clear and convincing

16  reasons supported by substantial evidence for rejecting them.  The ALJ shall then

17  proceed through steps four and five to determine what work, if any, plaintiff is

18  capable of performing.

19                                    **VI.**

20                               **CONCLUSION**

21        IT IS THEREFORE ORDERED that Judgment shall be entered

22  REVERSING the decision of the Commissioner denying benefits, and

23  REMANDING the matter to the Commissioner for further administrative action

24  consistent with this decision.

25

26  DATED: November 22, 2011

27                                                                    _____
28                                    HONORABLE SHERI PYM
                                      United States Magistrate Judge

17